**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CHIN YI TU,

        *Petitioner,*

    v.

NATIONAL TRANSPORTATION SAFETY
BOARD, NTSB CHIEF
ADMINISTRATIVE LAW JUDGE
WILLIAM E. FOWLER, JR.;
ADMINISTRATOR FEDERAL AVIATION
ADMINISTRATION MAYION C.
BLAKEY,

        *Respondents.*

No. 04-76454

TRAN No.
SE-16909

OPINION

On Petition for Review of an Order of the
Department of Transportation, NTSB

Argued and Submitted
September 12, 2006—Seattle, Washington

Filed December 14, 2006

Before: Mary M. Schroeder, Chief Circuit Judge,
Andrew J. Kleinfeld and Carlos T. Bea, Circuit Judges.

Opinion by Judge Bea

**COUNSEL**

C. Edward Adams, Esquire, Adams & Peterson, LLC, Gig Harbor, Washington, for the petitioner.

James A. Barry, Esquire, United States Department of Transportation, Office of the Counsel General, Washington, D.C., and Ronald S. Battocchi, Federal Aviation Administration, Office of the Chief Counsel, Washington, D.C., for the respondents.

**OPINION**

BEA, Circuit Judge:

We today decide whether an agency can effect notice of its ruling, so to start the running of time in which to appeal, by certified mail, when it has reason to know certified mail would not reach petitioner, whereas first class mail would. Actually, anyone who had read *Jones v. Flowers*, 126 S. Ct.

1708 (2006), could decide this case without more, but because *Jones* was decided after this case was briefed, a little more detail might help the parties.

The Federal Aviation Administration ("FAA") suspended Chin Yi Tu's ("Tu") pilot's license for 120 days allegedly for "buzzing" (flying below proscribed minimum safe altitudes) on two flights over Mount Rushmore National Memorial and Crazy Horse Mountain. In his petition for review, Tu argues the FAA denied him due process by failing to provide him adequate notice of the orders suspending his pilot's license, thereby denying him the opportunity timely to appeal the FAA's determination to the National Transportation Safety Board ("NTSB").

We have jurisdiction under 49 U.S.C. § 1153(a), and we grant the petition. We hold the FAA denied Tu due process when it failed to provide Tu with notice reasonably calculated, under all the circumstances, to notify Tu his pilot's license had been suspended, so that Tu could timely exercise his right of appeal to the NTSB.

## FACTS

On September 27, 2002, the FAA sent two letters of investigation by certified mail addressed to Tu's address of record.[1] Each letter stated the FAA was investigating whether Tu had flown below the minimum proscribed safe altitudes over Mount Rushmore National Memorial and Crazy Horse Mountain on September 23, 2002. The United States Postal Service

---

[1] "Certified Mail service provides the sender with a mailing receipt and, upon request, electronic verification that an article was delivered or that a delivery attempt was made. . . . Certified Mail is dispatched and handled in transit as ordinary mail." United States Postal Service, Domestic Mail Manual § 503.3.2.1 (2006). However, a certified "letter cannot be left like regular mail to be examined at the end of the day, and it can only be retrieved from the post office for a specified period of time." *Jones v. Flowers*, 126 S. Ct. 1708, 1719 (2006).

returned both letters to the FAA on October 18, 2002, marked "refused."² Tu claims he was out of the country when these certified letters were delivered and that he had not authorized an agent to receive certified mail. On October 28, 2002, the FAA sent two letters of investigation, containing the same content as the September 27, 2002 "refused" letters, by first class mail addressed to Tu's address of record. Tu received these letters and responded to the FAA within 10 days.³

On January 2, 2003, the FAA sent Tu a letter by first class mail informing him the FAA had concluded its investigation and had forwarded its report to the FAA's regional counsel.

On March 6 and March 10, 2003, the FAA sent Tu notices of proposed suspension of his pilot's license by both certified and first class mail. The notices proposed to suspend Tu's pilot's license for 120 days on the basis of the minimum safe altitude violations alleged in the letters of investigation. The notices also prompted Tu to select one of several options: waive his right to appeal, request the suspension orders be issued so he could appeal directly to the NTSB, submit information for the agency to consider before issuing adverse orders, or request an informal conference with an agency lawyer.

The FAA states it sent the notices of proposed suspension by both certified and first class mail because the September 27, 2002, letters of investigation that were sent by certified mail were returned "refused." Specifically, the FAA sent the notices of proposed suspension by first class mail "in order to

---

²49 C.F.R. § 821.8(d)(2) states: "(d) Presumption of service. There shall be a presumption of lawful service: . . . (2) When a properly addressed envelope, sent to the most current address in the official record, by regular, registered or certified mail, has been returned as unclaimed or refused.

³His response stated in part, "I did circle the points of interest to take some pictures. However, I do not believe that I have violated the minimum safe altitude as alleged under CFR 14 section 91.119."

insure that [Tu] had actual notice that the enforcement actions had been initiated." One of the notices of proposed suspension sent by certified mail was returned as "unclaimed"; the administrative record does not indicate whether Tu received the other notice of proposed suspension sent by certified mail. Again within 10 days of the first class mailings, Tu responded to both of the notices of proposed suspension that had been sent by first class mail, requesting the suspension orders be issued so that he could appeal directly to the NTSB.

On March 28, 2003, the FAA sent Tu a suspension order by certified mail only. On April 8, 2003, the FAA sent Tu a second suspension order, again by certified mail only. Both of these suspension orders gave Tu 20 days from the date of service in which to appeal to the NTSB, the path Tu had chosen and communicated to the FAA.

Regarding the decision to send these notices by certified mail only, the FAA has stated, "Once [Tu] had the Notice [Proposed Suspension] in hand and had requested the issuance of the Order of Suspension (the Order) we assumed that he would not continue to ignore Certified mail. Therefore, we served the Orders in the normal manner which is by Certified mail alone."[4] Each order suspended Tu's certificate for 120 days. Each order stated, pursuant to 49 C.F.R. § 821.30(a), that Tu "may appeal from this Order within twenty (20) days from the time of its service upon you." These suspension orders were returned to the FAA as "unclaimed" on April 24, 2003, and April 28, 2003. The record is singularly bereft of any reason or fact why the FAA would all of a sudden "assume" Tu would get certified mail in April, when he had not received it in September and October.

---

[4]The FAA inferred that Tu had "ignore[d] or refuse[d]" certified mail because the certified letters of investigation had been returned marked "refused," and a notice of proposed suspension had been returned as "unclaimed."

On May 19, 2003, the FAA sent, by both certified and first class mail, letters demanding Tu surrender his certificate to the agency. The FAA also attached copies of the Orders of Suspension that had been returned as unclaimed. The demand letters sent by certified mail were again returned as unclaimed. On May 30, 2003, and within twenty days of receiving the first class mail copies of demand letters Tu responded by requesting an appeal.[5]

The ALJ granted the FAA's subsequent motion to dismiss, finding Tu did not have good cause for filing his notice of appeal after the twenty day appeal period. In his appeal to the ALJ, Tu stated he was out of the country for business reasons when the suspension orders were mailed, but had made arrangements to ensure that he received first class mail in his absence. Tu further stated he did not anticipate that the FAA would send the suspension orders by certified mail alone because the earlier correspondence he received had been sent by first class mail. *Id.* Therefore, Tu had not authorized any of his employees at his address of record to sign for or pick up certified mail. *Id.* The ALJ dismissed his appeal as untimely, reasoning that the FAA was statutorily authorized to give notice by certified mail alone, that Tu should have

---

[5]Tu's response stated:

Please accept this notice as my request for an APPEAL of the ORDER OF SUSPENSION.

. . .

I did not get the Order of Suspension until [the] 23rd of May. I apologize I was not able to pick up the certified mail in time prior to it being returned to you by the postal office in April, because my work often takes me away from my home. However, I did not receive a first class mail in conjunction with the Order of Suspension. To my knowledge, I have not missed any regular mail. [The FAA's] letter dated May 19th[,] 2003, a regular US first class mail with a copy of the Order of Suspension arrived in my mailbox on May 23rd, 2003 and this matter has my full attention.

anticipated that the orders would be sent by certified mail, and that his lack of diligence undermined his claim of good cause.

A divided NTSB panel agreed with the ALJ's reasoning and affirmed.

## DISCUSSION

The FAA denied Tu due process by not providing him with adequate notice of the suspension orders. It thereby denied Tu the opportunity to file a timely appeal.[6] The lack of appeal led to the suspension of his pilot's license, an essential to his business as a pilot.[7]

[1] Due process does not require the FAA to provide a pilot with actual notice before taking adverse action with respect to his or her pilot's license. *See Jones*, 126 S. Ct. at 1713. Due process, however, does require notice reasonably calculated, under all the circumstances, to provide a pilot notice of an adverse action related to his or her pilot's license, thereby, affording the pilot an opportunity to present objections or appeal. *Id.* at 1714.

[2] Certified mail has been deemed constitutionally sufficient notice where "it was reasonably calculated to reach the intended recipient *when sent*." *Id.* (emphasis added). Accordingly, "the government [must] consider unique information about an intended recipient regardless of whether a statutory scheme is reasonably calculated to provide notice in the ordinary case." *Id.* at 1716. In addition, where mailed notice is

---

[6]This court has jurisdiction to review Tu's due process claim, even though he did not raise that claim below, because the FAA and NTSB "are without the power or jurisdiction to adjudicate th[is] constitutional claim[ ]. If judicial review were not permitted, [Tu] would be deprived of a forum in which to raise his constitutional claim[ ]." *Gilbert v. NTSB*, 80 F.3d 364, 366 (9th Cir. 1996) (citation omitted).

[7]"No person shall be . . . deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V.

returned unclaimed, the government must take additional steps to insure notice, if it is practicable to do so. *Id.* at 1713.

In *Jones v. Flowers*, the Arkansas Commissioner of State Lands ("Commissioner"), in compliance with Arkansas Code § 26-37301 (1997), attempted on two occasions to notify petitioner Gary Jones ("Jones") by certified mail that Jones' home would be sold if Jones did not pay delinquent taxes. *Id.* at 1712. Both certified letters were returned "unclaimed." *Id.* In addition, a few weeks before the tax foreclosure sale the Commissioner published a notice of public sale in the Arkansas Democrat Gazette. *Id.* Jones' home, which the parties stipulated had a fair market value of $80,000, was subsequently sold to Linda Flowers ("Flowers") for $21,042.15. *Id.*

Upon learning of the sale after the 30-day period for post-sale redemption had passed, Jones filed a lawsuit in Arkansas state court alleging that the Commissioner and Flowers had taken his property without due process by failing to provide adequate notice of the tax sale. *Id.* at 1713. The trial court granted the Commissioner and Flowers summary judgment. *Id.* The Arkansas Supreme Court affirmed, holding that under the circumstances certified mail was constitutionally adequate notice. *Id.* The United States Supreme Court reversed, holding "that when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Jones*, 126 S. Ct. at 1713.

**[3]** *A fortiori*, the FAA provided constitutionally defective notice in this case. The March 28 and April 8, 2003 suspension orders the FAA sent by certified mail were not "reasonably calculated to reach the intended recipient *when sent.*" *Id.* The FAA knew certified mail sent to Tu had previously been returned on two separate occasions as "refused" or "unclaimed."[8] What is more, knowing that certified mail was

---

[8]The FAA candidly admitted that, based on the fact that certified mail sent to Tu was returned, it "served the Notice of Proposed [Suspension] in each case by both Certified and First Class Mail in order to insure that [Tu] had actual notice that the enforcement actions had been initiated."

ineffective to reach Tu, the FAA had sent correspondence leading up to the suspension order by first class mail. First class mail worked. Tu responded to in a timely manner. Nevertheless, the FAA sent the orders suspending Tu's license—triggering the 20-day appeal deadline—by certified mail alone. Unsurprisingly, these orders sent by certified mail were returned to the FAA as unclaimed.

Moreover, when one suspension order was returned unclaimed and the receipt for the other suspension order was not returned, the FAA failed to take additional reasonable steps to notify Tu of the suspension orders. Specifically, the FAA failed to mail the suspension orders by first class mail.

**[4]** That the FAA reverted to sending Tu letters demanding the surrender of his pilot's license by both certified and first class mail—only after his suspension became unappealable—shows that it would have been practicable to send the suspension orders by first class mail in the first instance. It also shows that when the FAA actually desired to inform Tu it did so by first class mail. A reasonable agency actually desirous of notifying an individual of his right to be heard would not resort to a "mechanical adherence" to the minimum form of notice authorized by regulation in the very instance when timely notice is most crucial. *Dobrata v. INS*, 311 F.3d 1206, 1213 (9th Cir. 2002).

Under the circumstances of this case,[9] we hold the FAA denied Tu due process when it failed to provide adequate notice of the suspension of Tu's pilot's license, thereby, deny-

---

[9]Because petitioner does not seek the remedy, we do not rule on whether the FAA's actions constituted government action "without substantial justification," as that term applies under the Equal Access to Justice Act, 28 U.S.C. § 2412. Persistent use of certified mail when known not to reach addressee and refusal to use first class mail when known to reach addressee may well constitute such government action, as would government's defense of its position in litigation after such knowledge was brought home to it.

ing Tu the opportunity to appeal. Accordingly, Tu's petition is GRANTED.