**In re Paul John DURAN, Debtor.**

**No. 05–27650 SBB.**

United States Bankruptcy Court, D. Colorado.

July 25, 2006.

Leo Weiss, Office of the United States Trustee, Denver, CO, for the United States Trustee.

Derrick Edward Brown, Denver, CO, Pro Se.

Paul John Duran, Denver, CO, Pro Se.

Ingrid Faraj, Littleton, CO, Pro Se.

## MEMORANDUM OPINION AND ORDER REGARDING PETITION PREPARERS DERRICK EDWARD BROWN AND LEGAL AID NETWORK, INC.

SIDNEY B. BROOKS, Bankruptcy Judge.

On July 12, 2006, the Court conducted a continued hearing on its Order (1) Setting Continued Hearing and (2) Directing the United States Marshal to Serve Edward D. Brown, a/k/a Derrick Edward Brown, a/k/a Derich Edward Brown (the "March 13, 2006 Order to Show Cause") (Docket # 63), which was in turn a continuation of proceedings first commenced in this case by the Debtor's September 6, 2005 letter to the Court and proceedings held in November 2005, January 2006, March 2006, and July 2006. These proceedings concern the practices of Legal Aid Network, Inc. ("Legal Aid Network") and its principal Derrick Edward Brown, a/k/a Edward D. Brown, a/k/a Derich Edward Brown, a/k/a Derrich Edward Brown (hereinafter also referred to as "Mr. Brown"),[1] as bankrupt-

cy petition preparers under 11 U.S.C. § 110(a)(1).

### I. Chronology of the Case Leading Up to the July 12, 2006 Evidentiary Hearing

The Court summarizes the history of this case and the Court's efforts to obtain adequate service on, and to afford appropriate due process to, Mr. Brown and Legal Aid Network.

On July 18, 2005, Paul John Duran, ("Debtor"), filed his voluntary petition in bankruptcy, his Statement of Financial Affairs, Statement of Intent, and an Application to Pay Filing Fee in Installments.

On July 22, 2005 Angela Perez ("Ms.Perez") filed a Disclosure of Compensation of Bankruptcy Petition Preparer (Docket # 11) wherein she reflects that she was paid $485.00 for preparing most of the Debtor's bankruptcy documents.

On August 23, 2005, Mr. M. Stephen Peters, as Chapter 7 trustee, filed the Trustee's No Asset Report in this case.

On September 9, 2005, the Debtor mailed a letter to the Court complaining about the bankruptcy petition preparation services of Legal Aid Network and its agents (Docket # 13). The letter indicated that Ms. Perez was a friend who the Debtor employed to complete the work for which Legal Aid Network had been paid $300.00. For his $300.00 fee the Debtor received two completed documents, his voluntary petition and his creditors matrix. He did not receive the other documents which are required for complete Chapter 7 filing. Mr. Duran, by his letter, did not complain about the quality of Ms. Perez's services or her fee.[2]

---

1. The testimony before the Court indicates that Mr. Brown uses many aliases. Other aliases evidently used by Mr. Brown, per the

testimony of Ingrid Faraj, are Michael Kelly and Michael Curry, among others.

2. In the course of the various hearing in this matter, this Court was not presented with any

On October 4, 2005 the Court issued its Order Directing Filing of Response by Petition Preparer and/or Legal Aid Network, Inc. and Notice of Hearing (Docket # 15) ("October 4, 2005 Order"). The Court, by its October 4, 2005 Order, required a written response to the Debtor's letter by Cassandra C. Johnson ("Ms.Johnson"), the individual who signed the petition preparation affidavits on some of the Debtor's filed documents, and Legal Aid Network. The Court further required Ms. Johnson and a representative of Legal Aid Network to appear on November 15, 2005, at 11:00 a.m.

On November 15, 2005, Ms. Johnson appeared and represented to the Court that she was a contract typist for Legal Aid Network.[3] Ms Johnson identified the other individuals involved with Legal Aid Network as Edward D. Brown, Ingrid Faraj Brown, Stephen Jones, and Alissa Scott. Ms. Johnson further corroborated the representations of the United States Trustee's Office that the alleged mailing address for Ms. Johnson and Legal Aid Network, 191 University Boulevard, Suite 251, Denver, CO 80206 (the "University Boulevard Address"), was a private mail box company then known as Mailboxes Etc. Additional mailing addresses supplied by Ms. Johnson included P.O. Box 620158, Littleton, CO 80162; P.O. Box 20158, Littleton, CO 80162 ("P.O.Box 20158 Address"); 3333 E. Bayad [sic], Apartment 618, Denver, Colorado 80219[sic]; 10965 W. Polk, Littleton, CO 80124 (the "Polk Address"); and 8100 W. Crestline; Denver, CO 80219 (the "Crestline Address"). No representative of Legal Aid Network appeared at this hearing. The Court entered its order setting a continued hearing on the Debtor's letter.

Between December 16, 2005 and January 9, 2006 the Court received in its returned mail copies of the notice of the continued hearing on its Order to Show Cause. This returned mail included a return of all mail addressed to the Crestline Address, University Boulevard Address, and the P.O. Box 20158 Address. Notably, mail was returned from 3333 W. Bayad [sic], Apartment 618, Denver, Colorado 80219.

On January 4, 2006, Ms. Faraj–Brown (hereinafter also referred to as "Ms. Faraj"), through counsel, advised the Court through her Verified Motion to Appear by Phone (Docket # 42) that the Polk Address and P.O. Box 620158 Address were her addresses and no longer used by Mr. Brown and that she had no relationship to Legal Aid Network or any other enterprise run by Mr. Derrick Edward Brown, a/k/a Derrich Edward Brown. Ms. Faraj attached to her Motion an Exhibit that was a proposed order in the Browns' dissolution action in Jefferson County District Court which included an address of 3333 E. Bayaud Ave., Denver, CO 80206.

A continued hearing on the Debtor's letter was held on January 18, 2006.[4] The Court, on the record in open court and as reflected in the Minutes of Proceeding, indicated that it would enter a separate Order directing the United States Marshal to serve Mr. Brown with the Order resetting the Court's hearing on the Debtor's letter.

On March 13, 2006, the Court entered its March 13, 2006 Order to Show Cause (Docket # 63) setting another continued

---

argument or evidence indicating that there was any reason to question the quality or completeness of the work performed by or fee charged by Ms. Perez.

3. *See* Minutes of Proceeding dated November 15, 2006 (Docket # 23 and Docket # 24).

4. *See* Minutes of Proceeding dated January 18, 2006 (Docket # 59).

hearing on the October 2005 Order. The Court, by its March 13, 2006 Order to Show Cause, directed the United States Marshal to serve the March 13, 2006 Order personally on Mr. Brown. The March 13, 2006 Order was amended on March 15, 2006 (Docket # 64). By the amended Order, the continued hearing date on the Debtor's letter was set for May 16, 2006, at 10:00 a.m.

The hearing was further continued, on Mr. Brown's Motion to Continue Hearing filed May 10, 2006 (Docket # 67) and Mr. Brown's Emergency Motion to Continue Hearing filed May 15, 2006 (Docket # 71), to May 17, 2006 at 9:00 a.m. Mr. Brown appeared on May 17, 2006 and sought, by oral motion, yet another continuance, which the Court denied.

During the May 17, 2006 hearing, the United States Trustee tendered to Mr. Brown and the Court, during his presentation of the case, copies of the following documents: (1) the Colorado Supreme Court's injunction barring Mr. Brown and Legal Aid Network from engaging in the unauthorized practice of law, (2) sanctions orders from bankruptcy courts in Colorado, South Carolina, and Texas, (3) a notice of June 21, 2006 hearing and associated paperwork for a sanctions motion under § 110 in the United States Bankruptcy Court for the Eastern District of Pennsylvania.[5]

At the close of the hearing, the Court required Mr. Brown to provide, and update if necessary, valid addresses, phone numbers, email addresses and other information pertinent for service as part of the May 17, 2006 hearing. The hearing was recessed to July 12, 2006, because: (1) Mr. Brown indicated that he had dialysis treatment that morning, (2) the time available to Court was limited, and (3) the Court wished to provide Mr. Brown with an opportunity for an evidentiary hearing. The Court again ordered Mr. Brown to file written responses to Mr. Duran's letter prior to the July 12, 2006 hearing.

On June 27, 2006, Mr. Brown filed a copy of a letter dated June 26, 2006, which he had sent to Mr. Leo M. Weiss, United States Trustee's counsel (Docket # 80). Mr. Brown, in his letter, denied that he or Legal Aid Network were bankruptcy petition preparers. He further asserted, by his letter, that the documents prepared by Ms. Johnson were not filed with the Court because Mr. Duran filed the documents by Ms. Perez instead. In addition, Mr. Brown asked for clarification about which subsections of 11 U.S.C. § 110 Mr. Weiss thought were applicable in this case. Finally, he argued that his poor health precluded him from dealing with all the stress from the legal proceedings pending against him. The Court treated this letter as Mr. Brown's response to Mr. Duran's letter. No response was ever filed with the Court by Legal Aid Network.

On June 30, 2006, Mr. Brown filed a motion to appear telephonically at the July 12, 2006 hearing, which the Court granted on July 6, 2006 (Docket # 81).

## II. *The July 12, 2006 Hearing*

Mr. Brown appeared *pro se* by phone on July 12, 2006. No counsel appeared for Legal Aid Network, as required for any

---

5. In addition, the Court was advised that the United States Trustee had obtained the order for Mr. Brown's examination, pursuant to Fed.R.Bankr.P.2004, in his own pending Chapter 7 case, Case No. 06–11370 MER. Prior to the hearing in this Court, Mr. Brown was served with the notice of a Rule 2004 examination and document request requiring Mr. Brown to appear for examination on June 2, 2006, and to produce certain documents prior to that examination.

artificial person. Legal Aid Network was therefore defaulted by the Court.

Mr. Brown had not submitted any documents to the Court or Mr. Weiss in advance of the hearing. He also did not identify any witnesses.

At hearing, Brown asserted the following arguments:

A. Legal Aid Network is a joint venture owned by Mr. Brown and his ex-wife, Ms. Faraj;

B. Legal Aid Network is a referral service and not a bankruptcy petition preparer;

C. Ms. Johnson was the bankruptcy petition preparer and an independent contractor not an employee of Legal Aid Network;

D. Because Mr. Duran used Ms. Perez's forms and not those prepared by Ms. Johnson the provisions of 11 U.S.C. § 110 do not apply to the services provided by Ms. Johnson, much less Legal Aid Network;

E. The Court and United States Trustee were improperly allowing inquiry into his dissolution of marriage case; and

F. His poor health justified his conduct.

## III. *Discussion*

The Court heard testimony from Mr. Duran, Ms. Faraj and Mr. Brown. The Court found and concluded that Mr. Duran and Ms. Faraj were credible witnesses. The Court, however, found Mr. Brown's testimony to not be credible. Mr. Brown's testimony was often self-contradictory and internally inconsistent. His testimony was inconsistent with that of Mr. Duran and Ms. Faraj as well. The Court must there-fore disregard Mr. Brown's testimony on any and all points where it is contradicted by others or is otherwise self-contradictory.

A "bankruptcy petition preparer is defined as a 'person, other than an attorney or an employee of an attorney, who prepares for compensation a document for filing.'" 11 U.S.C. § 110(a)(1)(2004).[6] "A 'document for filing' means a petition or other document prepared for filing by a debtor in a United States bankruptcy or a United states district court in connection with a case under this title [title 11, United States Code]." 11 U.S.C. § 110(a)(2). The statute does not require that the document prepared actually be filed with a bankruptcy or district court. It merely requires that the document be "prepared for filing." By inference, 11 U.S.C. § 110 does require that a bankruptcy case be filed before the Court's jurisdiction can be invoked under 11 U.S.C. § 110. In the case at bar Mr. Duran did file a bankruptcy case, thereby giving the Court jurisdiction under 11 U.S.C. § 110, and there are persons who were paid to prepare documents for filing. The Court can review the conduct of both Ms. Perez and Legal Aid Network because both were paid to prepare documents which were to be filed in a bankruptcy case.

Mr. Brown's testimony, as corroborated by Ms. Faraj, establishes that Legal Aid Network was more than a referral agency and that Ms. Johnson was not an independent contractor for the purposes of 11 U.S.C. § 110. The Court finds that:

1. Mr. Brown set the fee for the bankruptcy petition preparation work;

2. Mr. Brown was the point of contact for potential customers by virtue of

---

**6.** This case was filed prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA).

The application of the BAPCPA amendments to § 110 would not change the result in this case.

Legal Aid Network's advertisements;

3. Mr. Brown selected the person to complete the work contracted for;

4. The alleged agreement between Ms. Johnson and Mr. Duran was an after-the fact artifice to make it appear that Ms. Johnson was an independent contractor long after the fee had been paid and the work done; and

5. Mr. Brown directed all of the activities of Legal Aid Network and is liable for its acts as its managing agent regardless of the actual ownership and legal structure of the "company."

Mr. Brown's role as the managing agent and control person for Legal Aid Network is further established by the findings of the Colorado Supreme Court in the unauthorized practice case before it and the Jefferson County District Court in the marital dissolution action.

■ The Court and the United States Trustee have duties and responsibilities under the Bankruptcy Code which sometimes requires parties to disclose information which they might well wish to remain private. Mr. Brown's ownership and control of Legal Aid Network are clearly relevant and material to the issues for the Court. The Court must afford full faith and credit to the judgments of the Colorado state courts. Those courts' findings that Mr. Brown is the owner of Legal Aid Network and derives income from that company must be accepted by this court. Those findings establish that Mr. Brown is properly before the Court as the person in control of Legal Aid Network. Other findings by those courts are relevant to Mr. Brown's credibility and his history of disregard for legal process. The actions of the Court and the United States Trustee have been appropriate and circumscribed.

The Court further notes that Mr. Brown has independent obligations to this Court as a debtor in Case Number 06–11370 MER. All of his financial affairs, including all of his income and assets are relevant targets of inquiry in considering whether Mr. Brown has fulfilled his duties to the Court as a debtor.

■ Mr. Brown's health is poor. However, this does not preclude him from being responsive to legal process. Mr. Brown could have hired counsel to represent him in this case and other matters before the Court. He did not do so. Rather, Mr. Brown has sought to use his health as sword and shield in is efforts to evade process, indefinitely postpone the adjudication of the issues before the various courts before which he has had matters pending, and otherwise hinder, delay and defraud the various courts and parties in interest from exercising their legal rights and remedies. The Court cannot countenance such misconduct by Mr. Brown.

Mr. Brown's attempts to evade legal process have included a panoply of aliases, incorrect and even nonexistent addresses and phone numbers. He has used post office box addresses which are hard to trace and make personal visits to Mr. Brown's businesses by customers or process servers impossible. He has employed a panoply of trade names, artificial entities and fronts to conceal his identity from his duped customers, from the courts and from those such as the United States Trustee charged with the obligation to execute their duties to prevent the type of conduct that he stands accused of before this and other bankruptcy courts. These tactics have been partially successful. Even when confronted with proof of personal service he has consistently denied receiving legal process, *e.g.*, Mr. Brown denied receiving

personal service of the Colorado Supreme Court injunction despite the affidavit of service filed with that court and its mailing to Mr. Brown's correct address. These evasive tactics are ineffectual where due process has nonetheless been afforded to Mr. Brown.

 Mr. Brown and Legal Aid Network have been afforded more than adequate due process in this case. On April 26, 2006, the United States Supreme Court decided *Jones v. Flowers*.[7] In *Flowers*, the Court reaffirmed a number of longstanding doctrines of pertinence to Mr. Brown's pattern of evading service by use of erroneous addresses and feigned protestations that he had not received various legal process. Due process does not require "actual notice" it merely requires " 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' "[8] In general, "reasonably calculated notice" under *Mullane* is met where the government sends a notice to the address provided by a party pursuant to a legal requirement to provide the government with an address.[9] The Court finds that "reasonably calculated notice" was afforded Mr. Brown by mailing legal process to him and his affiliates at the addresses provided by them when they were under an obligation to provide an accurate address to the Court.

Mr. Brown and Legal Aid Network were required by 11 U.S.C. § 110(b)(1) to provide a name and address of the petition preparer. The BAPCPA amendments to 11 U.S.C. § 110(b)(1) make it clear that where bankruptcy documents are prepared by an artificial person, such as Legal Aid Network, then "an officer, principal, responsible person, or partner" and not the actual typist is to execute the appropriate certifications under 11 U.S.C. § 110. The name and address of the "officer, principal, responsible person, or partner" is required to be disclosed. This statutory amendment codifies much of the case law which had imposed obligations on the principals of artificial persons.[10]

Placing the burden of complying with the disclosure requirements of 11 U.S.C. § 110(b)(1) on an officer, principal, responsible person, or partner in an artificial entity enables a court to pierce through layers of fraudulent shells to impose sanctions on miscreant principals who seek to evade the consequences of their acts. The cornucopia of false addresses, aliases, and other deceptive practices by Mr. Brown are an exemplar of the wisdom of requiring managers of unresponsive and deceptive bankruptcy petition preparers to personally bear the consequences of noncompliance with 11 U.S.C. § 110.

Not only this Court but also other courts throughout the country have been compelled to expend scarce resources to address the malfeasance of Mr. Brown individually and through his panoply of similarly named fronts. Neither he nor others associated with these scofflaw enterprises have been responsive to the various courts' efforts to address their undeniably overpriced poor quality services which they have marketed to an unsuspecting and vul-

---

**7.** —— U.S. ——, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006).

**8.** 126 S.Ct. at 1713–14, (quoting, *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 652, 94 L.Ed. 865 (1950)).

**9.** 126 S.Ct. at 1717.

**10.** *See, e.g., In re Gomez*, 259 B.R. 379, 384 (Bankr.D.Colo.2001).

nerable class of individuals. Mr. Brown is precisely the type of individual at whom 11 U.S.C. § 110 was directed both in its 1994 initial enactment and its substantial modifications under the new BAPCPA statute. "The meaning of the Constitution should not turn on the antics of tax evaders and scofflaws." [11]

### IV. *Order and Entry of Sanctions*

■ Based upon the above and foregoing, statutory sanctions, including injunctive relief, are appropriate in this case to address the various violations of 11 U.S.C. § 110 by Mr. Brown and Legal Aid Network.

IT IS THEREFORE ORDERED that judgment enters in favor of Mr. Duran and against Mr. Brown and Legal Aid Network, jointly and severally, as follows:

1. In the amount of $300.00 representing statutory damages and sanctions under 11 U.S.C. § 110(i). These consist of his actual damages, the greater of $2,000.00 or twice the fee paid, and attorneys' fees and costs in moving for damages;

2. Actual damages of $200.00; and

3. Statutory damages of $2,000.00, under 11 U.S.C. § 110(i)(B) because this exceeds twice the $300.00 fee paid in this case.[12]

IT IS FURTHER ORDERED that the Court awards sanctions in favor of the United States Trustee against Mr. Brown and Legal Aid Network, jointly and severally, for their violations of 11 U.S.C. § 110 in the amount of $2,000.00, calculated as follows:

1. $500.00 for violations of 11 U.S.C. § 110(b)(1) and its requirement for Mr. Brown to sign the documents prepared by Legal Aid Network and to print his name and address on those documents;

2. $500.00 for violations of 11 U.S.C. § 110(c)(1) for Mr. Brown's failure to place his Social Security Number on the documents prepared in this case by Legal Aid Network;

3. $500.00 for violations of 11 U.S.C. § 110(f)(1) by the use of the term "Legal" as part of the name of Legal Aid Network, as bankruptcy petition preparer; and

4. $500.00 for Mr. Brown's failure to file a declaration under penalty of perjury of the fee paid to him and Legal Aid Network, as required by 11 U.S.C. § 110(h)(1).

IT IS FURTHER ORDERED that:

■ 1. Mr. Brown and any entity in which he has any interest as a owner, manager, equity holder, employee, officer, director, partner, member, consultant, or any similar relationship, including, but not limited to, Legal Aid Network are enjoined from engaging in any activity whatsoever constituting bankruptcy petition preparation including operating a referral service, advertising bankruptcy related services of any kind, or otherwise holding themselves as providing any bankruptcy services, advice, referrals, education, counseling, or otherwise.[13] Mr. Brown and his related entities are enjoined from activities without regard to whether they receive any form of remuneration whatsoever. It is the intent of this Court that Mr. Brown and his related entities have nothing whatsoever to do with any bankruptcy matter

---

**11.** 126 S.Ct. at 1727 (Thomas, J., dissenting).

**12.** This sum exceeds twice the $300.00 fee paid in this case in accordance with 11 U.S.C. § 110(i)(B).

**13.** Mr. Brown and Legal Aid Network have previously been enjoined from engaging in the unauthorized practice of law in the state of Colorado.

pending before this Court or any other court exercising bankruptcy jurisdiction except his own personal bankruptcy and any bankruptcy in which he or a related entity may be a creditor, a debtor of the debtor, or the subject of legal process.

2. Mr. Brown and his related entities are also enjoined from utilizing in any manner whatsoever any trade name, legal name, trademark, service mark, or other form of identification which uses the terms "legal" or "law" or any similar term.

IT IS FURTHER ORDERED that the fines, refunds and sanctions imposed by this order shall be paid within ten (10) days of this order becoming a final non-appealable order. Mr. Brown is advised and admonished that further sanctions may be assessed against him should he fail to pay the sums assessed him by this order where such sanctions may include the entry of a civil contempt order, the denial or revocation of Mr. Brown's discharge in bankruptcy, the referral of this matter to the United States District Court for consideration of criminal contempt sanctions, the referral of such noncompliance to the Colorado Supreme Court for consideration of sanctions under its prior orders, and the entry of an order taxing his bankruptcy estate for such sanctions.