

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-19-2006

# Perez-Alevante v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4230

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Perez-Alevante v. Atty Gen USA" (2006). *2006 Decisions*. Paper 442.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/442

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-4230
_____


HUGO EDUARDO PEREZ-ALEVANTE,
Petitioner,
vs.

ALBERTO GONZALES,
Attorney General of the United States,
Respondent.

_____


On Petition for Review of an Order of the
Board of Immigration Appeals
U.S. Department of Justice, Executive Office for Immigration Review
(BIA No. A36-821-800)
I.J. Henry S. Dogin

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 15, 2006

_____


Before: SLOVITER, WEIS and GARTH, Circuit Judges

(Filed: September 19, 2006)


_____

OPINION
_____


1

Garth, Circuit Judge:

Hugo Eduardo Perez-Alevante petitions for review of a final order entered by the Board of Immigration Appeals ("BIA") on August 16, 2005, affirming an immigration judge's denial of his motion to reopen his removal proceedings. Administrative Record ("A.R.") 2. For the reasons stated below, we will grant the petition.

I

Perez-Alevante was born in the Dominican Republic and admitted into the United States as a permanent resident in 1979 at the age of nine. A.R. 77, ¶¶ 1-2. On March 29, 1996, he pled guilty in New Jersey Superior Court to one count of possession of a controlled dangerous substance (cocaine) with intent to distribute within 1000 feet of a school, in violation of N.J. Stat. Ann. § 2C:35-7. *Id.* at 95-97. He was sentenced to five years confinement. *Id.* at 95. He successfully completed the "Intensive Supervision Program," and was released from incarceration in March 1997. *Id.* at 77, ¶ 4; 80.

As a result of this conviction, on December 3, 1997, the INS served Perez-Alevante with a notice to appear, charging him with being removable pursuant to 8 U.S.C. §§ 1227(a)(2)(A)(iii) (conviction of an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(B) (illicit trafficking in a controlled substance)) and 1227(a)(2)(B)(i) (conviction of a controlled substance violation). A.R. 104-06. The first page of the notice shows that the street address for Perez-Alevante, 508 Central Avenue in Harrison, New Jersey, was crossed out and changed to 307 William Street. *Id.* at 104. The final page advised Perez-Alevante that

he was immediately required to provide the INS in writing with his mailing address and that it was his responsibility to notify the immigration court immediately any time that address changed. *Id.* at 106. It further cautioned him that if he did not "provide an address at which [he] may be reached during proceedings," he would not be entitled to notice of his removal hearing and a removal order could be entered at that hearing in his absence. *Id.*

Perez-Alevante acknowledged receiving this notice by signing it on December 3, 1997. *Id.* He retained counsel to represent him in matters relating to his possible deportation, and on December 8, 1997, his counsel entered an appearance and filed a Form EOIR-28 with the immigration court in Newark, New Jersey. *Id.* at 83.

On April 16, 2004, the District Counsel for Immigration and Customs Enforcement ("ICE") in Newark mailed Perez-Alevante a letter stating that his notice to appear was being filed with the immigration court in Newark. *Id.* at 99. The letter was mailed to 307 William Street. *Id.* The administrative record does not reveal if this letter was ever returned to ICE by the United States Post Office, nor does it reveal whether the District Counsel ever mailed a copy of this letter to Perez-Alevante's attorney.

On April 19, 2004, the immigration court mailed Perez-Alevante a notice of hearing, again using the 307 William Street address. The notice of hearing stated that Perez-Alevante's case had been scheduled for a hearing on May 18, 2004 at 9:00 a..m., and gave the location in Newark. *Id.* at 94. As was the case with the April 16th letter, the administrative record does not disclose whether the notice was returned to the immigration court by the Post

3

Office, or whether a notice of hearing was sent to Perez-Alevante's attorney.

Perez-Alevante failed to appear at the hearing and was ordered deported *in absentia*. *Id.* at 93.

On October 20, 2004, Perez-Alevante filed a motion to reopen with the immigration judge, asserting that (i) neither he nor his attorney received notice of the removal hearing; (ii) he was eligible to apply for a discretionary waiver of deportation under 8 U.S.C. § 1182(c) pursuant to *I.N.S. v. St. Cyr*, 533 U.S. 289 (2001); and (iii) his case should be reopened to permit him the opportunity to apply for such a waiver. *Id.* at 73-75. In an affidavit submitted in support of his motion, Perez-Alevante attested that his address was 226 Belgrove Drive in Kearny, New Jersey, and that he had lived at that address since September 2000. *Id.* at 77, ¶ 1. He never asserts that he notified either the immigration court or ICE that he had changed his address from the address stated on the notice to appear.

The immigration judge denied Perez-Alevante's motion to reopen. *Id.* at 61-63. The judge found that the notice of hearing was properly mailed to the most recent address Perez-Alevante provided; that he had been personally served with the notice to appear and thus actually informed both of his responsibility to keep the immigration court apprised of his current address and the consequences of any failure to do so; and thus, that the *in absentia* removal order was properly entered. *Id.*

Perez-Alevante appealed the immigration judge's denial of his motion to reopen to the BIA. *Id.* at 5-19, 32-36. He again raised the issue that neither he nor his attorney had

4

received notice of the May 18, 2004 hearing. *Id.* at 13-14. In addition, he again asserted that he was eligible for a discretionary waiver of deportation. *Id.* at 15-19.

The BIA denied Perez-Alevante's appeal. After adopting and affirming the decision of the immigration judge, the BIA found that (i) Perez-Alevante was deemed to have received notice of his hearing date because notice was sent to the most recent address he provided and he was aware of his obligation to keep that address current; (ii) there were no exceptional circumstances excusing his failure to appear; and (iii) the availability of new relief in the form of a discretionary waiver of deportation did not obviate the fact that he failed to appear at the May hearing and was ordered deported *in absentia*. *Id.* at 2-3.

This petition for review followed.

II

The government argues that this Court lacks jurisdiction over this matter. Section 1252(a)(1) of Title 8, as amended by The REAL ID Act of 2005 ("REAL ID Act"), gives this Court jurisdiction to review final orders of removal. "Implicit in this jurisdictional grant is the authority to review orders denying motions to reopen any such final order." *Patel v. United States Att'y Gen.*, 334 F.3d 1259, 1261 (11th Cir. 2003) (citation omitted). However, in cases involving criminal aliens, the REAL ID Act restricts the Court's jurisdiction to constitutional claims and questions of law. 8 U.S.C. § 1252(a)(2)(C), (a)(2)(D).

Perez-Alevante does not contest that he is a criminal alien. While this classification already limits the potential scope of our review, the government relies on *Papageorgiou v.*

5

*Gonzales*, 413 F.3d 356 (3d Cir. 2005), for the further proposition that in cases involving criminal aliens, our jurisdiction extends only to "legitimate" constitutional claims and questions of law. (Resp't Br. 15-16.) The government misreads the holding in *Papageorgiou*. In that case, we established that the REAL ID Act restored our jurisdiction over constitutional claims and questions of law presented in a criminal alien's petition for review of his or her final removal order. *Papageorgiou*, 413 F.3d at 358. After explaining our jurisdiction, we found the particular constitutional claim Papageorgiou asserted to be meritless and denied the petition. *Id.* at 359. In other words, assertion of a constitutional claim or question of law gives the Court the authority to resolve that claim on the merits; the Court remains free, as always, to deny meritless claims.

III

Perez-Alevante contends that his lawyer was not provided with a notice of hearing and that this omission constitutes an error of law requiring reversal of the denial of the motion to reopen. The government concedes both that there is no indication in the Administrative Record that Perez-Alevante's attorney was ever sent a copy of the notice of hearing and that the question of whether it was error not to provide such notice, is a question of law. (Resp't Br. 7, 22.)

We have jurisdiction to review this question of law. 8 U.S.C. § 1252(a)(2)(D). We review the "BIA's legal decisions *de novo*, but will afford *Chevron* deference to the BIA's reasonable interpretations of statutes which it is charged with administering." *Francois v.*

6

*Gonzales*, 448 F.3d 645, 648 (3d Cir. 2006) (quotation and citation omitted).

The statute which governs the giving of a notice to appear at a removal hearing states that the notice must "be given in person to the alien (or, if personal service is not practicable, through service by mail to the alien or to the alien's counsel of record, if any)." 8 U.S.C. § 1229(a)(1). Section 1229(a)(1)(F) of Title 8 requires that this notice specify:

> (i) The requirement that the alien must immediately provide (or have provided) the Attorney General with a written record of an address and telephone number (if any) at which the alien may be contacted respecting proceedings under section 1229a of this title.
> (ii) The requirement that the alien must provide the Attorney General immediately with a written record of any change of the alien's address or telephone number.
> (iii) The consequences under section 1229a(b)(5) of this title of failure to provide address and telephone information pursuant to this subparagraph.

8 U.S.C. § 1229(a)(1)(F).

Turning to the referenced statute, then, subparagraph (A) of section 1229a(b)(5) declares that if a notice to appear "has been provided to the alien or the alien's counsel of record," but the alien fails to appear at the removal proceeding, he:

> shall be ordered removed in absentia if the Service establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable . . . . The written notice by the Attorney General shall be considered sufficient for purposes of this paragraph if provided at the most recent address provided under section 1229(a)(1)(F) of this title.

8 U.S.C. § 1229a(b)(5)(A). Furthermore, subparagraph (B) cautions that "[n]o written notice shall be required under subparagraph (A) if the alien has failed to provide the address required under section 1229(a)(1)(F) of this title." 8 U.S.C. § 1229a(b)(5)(B).

7

Finally, the accompanying regulations mandate that "[w]henever a person is required by any of the provisions of this chapter to give or be given notice . . . *such notice . . . shall be given by or to . . . the attorney or representative of record, or the person himself if unrepresented.*" 8 C.F.R. § 292.5; 8 C.F.R. § 1292.5. (emphasis added).

Perez-Alevante relies on these regulations to argue that the immigration court should have sent a hearing notice to his attorney of record. Indeed, the regulations make clear that whenever an alien must be given notice, his counsel of record, if any, is also entitled to notice. *See* 8 C.F.R. § 292.5; 8 C.F.R. § 1292.5. In response, the government invokes the notice-eliminating subparagraph, 8 U.S.C. § 1229a(b)(5)(B), to maintain that because Perez-Alevante, after moving in 2000, never provided notice of his change of address to the immigration court as he was required to do, the immigration court was under no obligation to provide any notice of the hearing; if there was no obligation to provide notice to Perez-Alevante, there was no derivative obligation under the regulations to provide notice to his counsel. The government further represents that insofar as there remained a notice requirement here, it was fulfilled when the immigration court sent the notice of hearing to the most recent address Perez-Alevante provided. *See* 8 U.S.C. § 1229a(b)(5)(A).

As a preliminary matter, we are not persuaded by the government's contention that 8 U.S.C. § 1229a(b)(5)(B) eliminates entirely the government's statutory obligation to give notice of a removal hearing to an alien who has provided a mailing address, but has not updated it. The more reasonable interpretation of this provision is that at a removal hearing

8

where the alien is not in attendance *and* has provided *no* contact information under 8 U.S.C. § 1229(a)(1)(F), then 8 U.S.C. § 1229a(b)(5)(B) absolves the government of the burden of establishing by "clear, unequivocal, and convincing evidence that the written notice was . . . provided." 8 U.S.C. § 1229a(b)(5)(B). Indeed, where the alien has provided no address, it is doubtful that notice could have been provided. However, the statute does not indicate an intent to eliminate the  giving of notice where the government is in possession of some address for the alien. For example, 8 U.S.C. § 1229a(b)(5)(A) declares that written notice is sufficient "if provided at the most recent address provided under section 1229(a)(1)(F) of this title." 8 U.S.C. § 1229a(b)(5)(A). To be sure, the fact that 8 U.S.C. § 1229a(b)(5)(A), by its reference to the "*most recent* address," particularizes which address it is indicating, whereas 8 U.S.C. § 1229a(b)(5)(B) refers only to "the address," supports our view that 8 U.S.C. § 1229a(b)(5)(B) can only be invoked where the alien has provided absolutely no address.

We are satisfied that Perez-Alevante's Fifth Amendment right to due process was violated by the immigration court's failure to provide notice to his attorney of record. A recent Supreme Court case dealing in a different context but addressing the principle of notice, *Jones v. Flowers*, 126 S. Ct. 1708 (2006), informs our decision. After Jones' house was sold in a tax sale, Jones brought suit, claiming his rights under the Fourteenth Amendment Due Process Clause were violated because he had not received notice prior to the sale. *Id.* at 712-13. The Arkansas Commissioner of State Lands had sent Jones notice by certified mail in accordance with the applicable statute, but when the packet was returned

9

unopened and marked "unclaimed," the Commissioner took no further action. *Id.*

The Court held that the state's failure to take additional reasonable steps to provide notice after learning that the statutorily-prescribed notice method had failed, violated due process. *Id.* at 1713. Although Jones had failed to comply with a statutory obligation to keep his address updated, the Court agreed that this failure did not result in forfeiture of his right to be given constitutionally sufficient notice before the state could sell his property for delinquent taxes. *Id.* at 1717. Similarly, the fact that Perez-Alevante did not comply with his statutory responsibility to provide a current address did not necessarily mean that the immigration court was entirely relieved of its obligation to provide him with notice that met the requirements of the Due Process Clause. This is so, particularly where the regulations provide for notice to an alien's attorney and no such notice was given. *See* 8 C.F.R. § 292.5; 8 C.F.R. § 1292.5.

We, just as the *Jones* Court, are guided by the principle that "when notice is a person's due . . . [t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* at 1715 (citation and quotation omitted). It is well-settled that aliens facing removal are entitled to due process. *See e.g.*, *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001). We believe that an immigration court intent on actually informing an alien of his removal hearing and in possession of the contact information for the alien's counsel, would certainly take the reasonable step of mailing notice to that counsel. This additional step requires *de minimus* effort by the government, and is

10

balanced against the significant interest an alien facing removal has in being able to continue his professional and familial life in this country. *See Sewak v. I.N.S.*, 900 F.2d 667, 671-72 (3d Cir. 1990) ("Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom. Meticulous care must be exercised lest the procedure by which he is deprived of that liberty not meet the essential standards of fairness."). Although *Jones* found a due process violation in the fact that the State took no additional steps to give notice *after* becoming aware that its initial attempt had been unsuccessful, the immigration court here had the contact information for Perez-Alevante's counsel *from the outset*. Considering that "the constitutionality of a particular procedure for notice is assessed *ex ante*," *Jones*, 126 S. Ct. at 1717, we have no difficulty in finding that the additional step of providing notice to Perez-Alevante's counsel, where the immigration court knew he was represented by counsel and was in possession of that counsel's contact information, was required by the Due Process Clause.

We will grant the petition on the grounds of inadequate notice. Hence, we do not address Perez-Alevante's argument concerning a discretionary waiver of deportation. We will remand to the BIA with directions that it remand to the immigration judge to consider Perez-Alevante's remaining arguments.

11