960 So.2d 1002 (2007)
Casey T. MORGAN
v.
LOUISIANA STATE UNIVERSITY HEALTH SCIENCES CENTER-E.A. CONWAY MEDICAL CENTER.
No. 2006 CA 0570.
Court of Appeal of Louisiana, First Circuit.
April 4, 2007.
*1003 Robert J. Bozeman, Clint R. Hanchey, Monroe, Counsel for Plaintiff/Appellee Casey T. Morgan.
William A. Norfolk, Baton Rouge, Counsel for Defendant/Appellant LSU Health Sciences Center E.A. Conway Medical Center.
Robert R. Boland, Jr., Baton Rouge, Counsel for Defendant/Appellant Anne S. Soileau, Acting Director, Department of State Civil Service and Acting Secretary, State Civil Service Commission.
Before: PARRO, GUIDRY, and GAIDRY, JJ.
GUIDRY, J.
The Louisiana State University Health Sciences Center  E.A. Conway Medical Center (LSU) appeals a decision from the State Civil Service Commission (Commission), reversing LSU's termination of the employment of its employee, Casey T. Morgan, and awarding attorney fees. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
LSU employed Ms. Morgan as an Accounting Specialist 2 in the Patient Accounts department at the E.A. Conway Medical Center. She served with permanent status. On April 22, 2005, H. Ayron McGuire, hospital administrator and delegated appointing authority[1] for the hospital, *1004 sent Ms. Morgan a certified letter dated April 21, 2005, advising her that he was considering terminating her employment for non-disciplinary reasons. Concluding the letter, Mr. McGuire further advised Ms. Morgan that she could "respond to this proposed action either verbally or by letter addressed to me. Any such response must be accomplished not later than April 29, 2005." This letter was received on behalf of Ms. Morgan on May 3, 2005.[2]
Meanwhile, Mr. McGuire sent a follow-up certified letter dated May 3, 2005, to Ms. Morgan informing her that "[a]fter receiving no response to my letter dated April 21, I have decided to proceed with the non-disciplinary action described in that previous letter. Your removal from your appointment as an Accounting Specialist 2 at this facility will be effective at 4:30 p.m. Wednesday, May 11, 2005." Ms. Morgan personally received delivery of the May 3, 2005 letter on May 4, 2005.
By a letter dated June 2, 2005, Ms. Morgan appealed LSU's decision to terminate her employment for non-disciplinary reasons, asserting that LSU violated Civil Service Rule 12.7 in failing to give her a reasonable opportunity to respond to the April 21, 2005 letter and in failing to describe the evidence supporting the proposed action to terminate her employment. The referee assigned by the Commission to hear Ms. Morgan's appeal reversed her termination; reinstated her employment, subject to various conditions, effective May 11, 2005, the date of her termination; and awarded her $1,500 in attorney fees.[3] LSU sought review of the referee's decision by the Commission, but the Commission denied its application for review and the decision of the referee became the final decision of the Commission on December 16, 2005.[4] LSU then appealed the decision of the Commission to this court.

ASSIGNMENTS OF ERROR
In this appeal, LSU contends that the Commission's reversal of its termination of Ms. Morgan's employment was premised on the following errors:
ASSIGNMENT OF ERROR NO. 1:
The Commission erred in finding that the attempt by the U.S. Postal Service to deliver a certified letter to the residence of Casey Morgan did not constitute delivery of the letter advising Morgan that LSU was considering separating her from her employment at LSU under Civil Service Rule 12.6(a)1.
ASSIGNMENT OF ERROR NO. 2:
The Commission erred in finding that LSU had not afforded Casey Morgan "due process" in the manner in which it notified her of its intent to separate her from her employment.
ASSIGNMENT OF ERROR NO. 3:
The Commission erred in failing to find that Casey Morgan had been given the opportunity to respond to the "predeprivation" letter dated April 21, 2005.
ASSIGNMENT OF ERROR NO. 4:
The Commission erred in failing to find that [Casey] Morgan had been given [an] opportunity to respond to the May 3, 2005 letter (which advised her *1005 of her separation of employment scheduled for May 11, 2005).
ASSIGNMENT OF ERROR NO. 5:
The Commission erred in failing to apply the "7 day presumption" of Civil Service Rule 12.8(d)2 to the letter sent to [Casey] Morgan by certified mail.
ASSIGNMENT OF ERROR NO. 6:
The Commission erred in awarding attorney's fees to Casey Morgan and her attorney, stating that LSU had been "unreasonable."

DISCUSSION
Classified civil service employees have a property interest in retaining their positions and cannot be terminated without due process of law. Slowinski v. England Economic and Industrial Development District, 02-0189, p. 3 (La.10/15/02), 828 So.2d 520, 523. Civil Service Rule 12.7 provides that no permanent employee may be removed until he has been given oral or written notice of the proposed action, the reasons for the proposed action, a description of the evidence supporting the proposed action, and a reasonable opportunity to respond.
In its first two assignments of error, LSU contends that the manner in which the April 21, 2005 letter was sent to Ms. Morgan was sufficient to constitute delivery of the letter by April 25, 2005, and notice in compliance with due process and Civil Service Rules. Absent proof that Ms. Morgan deliberately avoided receipt of the letter, we find no merit in this assertion.
LSU offered into evidence two pages identified as "track & confirm" reports generated by the United States Postal Service relative to the delivery of the April 21, 2005 certified letter. The first report states that a notice was left on April 25, 2005, at 4:12 p.m., in Farmerville, Louisiana, and that delivery was made on May 3, 2005, at 12:24 p.m., in Farmerville, Louisiana. The second report simply reiterates that the item was delivered on May 3, 2005, at 12:24 p.m., in Farmerville, Louisiana. A copy of the return receipt postcard for the April 21, 2005 letter, offered into evidence by LSU, confirmed that the letter was delivered on May 3, 2005, and revealed that Rick Bowen signed for delivery of the letter.
Although Ms. Morgan may not have been as prompt in collecting the letter from the post office as LSU may have hoped, there was no evidence presented that she deliberately ignored the notice or delayed retrieving the letter. See McFarland v. Dippel, 99-0584 (La.App. 1st Cir.3/31/00), 756 So.2d 618, 622 ("where the facts demonstrate a litigant chose to ignore notice of a certified letter, and refused to claim the letter at the post office, that conduct is tantamount to a refusal of service and cannot defeat otherwise valid service"). Thus, we find no basis for holding that Ms. Morgan's due process rights relative to the termination of her employment should be forfeited just because no one happened to be available to take delivery of the April 21, 2005 certified letter on the first attempted delivery by the United States Postal Service.
Nor do we find persuasive LSU's assertion that the mere sending of the letter by certified mail constitutes service of those documents and thus notice under the circumstances of this case. In Jones v. Flowers, 547 U.S. 220, 239, 126 S.Ct. 1708, 1721, 164 L.Ed.2d 415 (2006), the United States Supreme Court held that the state could not simply ignore that a certified letter, sent to a taxpayer notifying him that his property was to be sold at a tax sale, had been returned unclaimed, stating "[i]t is not too much to insist that the State do a bit more to attempt to let him know about *1006 it when the notice letter addressed to him is returned unclaimed."
As observed by the Court in Jones, "[u]sing certified mail provides the State with documentation of personal delivery and protection against false claims that notice was never received. That added security, however, comes at a price  the State also learns when notice has not been received." Jones, 547 U.S. at 237, 126 S.Ct. at 1720 (emphasis in original). Further, "the use of certified mail might make actual notice less likely in some cases  the letter cannot be left like regular mail to be examined at the end of the day, and it can only be retrieved from the post office for a specified period of time." Jones, 547 U.S. at 235, 126 S.Ct. at 1719.
While not factually on point, the holding in Jones clearly underscores the premise that due process requires the government to provide "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Thus, although the actions of LSU may have been reasonably calculated to provide notice in the ordinary case, the notice was clearly inadequate in this case, especially considering that the government is required to consider unique information about an intended recipient. See Jones, 547 U.S. at 230, 126 S.Ct. at 1716. Notice was properly not presumed in this case in light of compelling evidence that it was not timely received. The inadequacy of the notice is even more obvious in this case, where LSU had proof that the recipient received the notice untimely, than in Jones where the notice letter was simply returned unclaimed. We therefore reject LSU's allegations in its first two assignments of error that the Commission erred in finding that the notice provided herein was inadequate.
In its third and fourth assignments of error, LSU avers that the Commission erred in finding that Ms. Morgan had not been given a reasonable opportunity to respond to both the April 21, 2005 and May 3, 2005 letters. We find no merit in this argument. Civil Service Rule 12.7 provides that no permanent employee may be removed "until he has been given oral or written notice of the proposed action and the reasons therefor, a description of the evidence supporting the proposed action and a reasonable opportunity to respond thereto." (Emphasis added).
The contents of the April 21, 2005 letter gave notice of and reasons for the proposed action and further stated a time period in which Ms. Morgan could respond to the proposed letterby April 29, 2005; however, because Ms. Morgan did not receive the April 21, 2005 letter until May 3, 2005, she essentially did not have, and accordingly was not given, an opportunity to respond to the April 21, 2005 letter, because the identified time period to respond had elapsed prior to her receipt of the notice. Moreover, the April 21, 2005 letter specifically stated that Ms. Morgan's response "must be accomplished not later than April 29, 2005." Thus, in accordance with the plain wording of the April 21, 2005 letter, Ms. Morgan was precluded from responding to the proposed action after April 29, 2005.
Furthermore, LSU's assertion that it would have allowed Ms. Morgan to respond to the proposed termination of her employment after the April 29, 2005 deadline was in no manner expressed or communicated in the May 3, 2005 letter. Instead, the May 3, 2005 letter simply informed Ms. Morgan of the decision to terminate her employment effective 4:30 p.m., Wednesday, May 11, 2005, and advised *1007 her that she could appeal the decision to the Commission within thirty days. Pursuant thereto, Ms. Morgan filed an appeal of the decision with the Commission on June 2, 2005. Neither letter gave any indication that Ms. Morgan could respond to the proposed action as of the date of her receipt of the letters; rather, the April 21, 2005 letter expressly communicated that no response would be allowed as of the date Ms. Morgan received that letter and the May 3, 2005 letter pointedly advised Ms. Morgan that if she disagreed with the decision communicated therein, she could appeal the decision to the Commission. As such, Ms. Morgan was not given a pre-deprivation opportunity to respond to the proposal to terminate her employment, and the Commission did not err in so finding.
In its fifth assignment of error, LSU contends that the Commission erred in holding that the provisions of Civil Service Rule 12.8(d)(2) did not apply to certified mail. That rule provides that "[w]ritten notice is considered given . . . on the 7th calendar day after it is mailed to the employee, with correct postage, at the most recent address he furnished in writing to his personnel office." Even assuming the provisions of Rule 12.8(d)(2) were applicable to certified mail, the notice in this case would still be inadequate as the date by which the notice would be presumed to have been received under the rule was the same as the date by which Ms. Morgan was required to respond to the April 21, 2005 letter. Thus, based on our observation that even had LSU relied on the presumption provided in Rule 12.8(d)(2), the notice still would have been inadequate to allow Ms. Morgan a reasonable opportunity to respond to the proposed action as mandated under Civil Service Rule 12.7; Accordingly, we pretermit ruling on whether the presumption provided in Civil Service Rule 12.8(d)(2) applies to certified mail.
Finally, in its last assignment of error, LSU contests the award of attorney fees to Ms. Morgan. Civil Service Rule 13.35 grants referees and the Commission the discretionary power to award attorney fees when the action of an appointing authority is modified or reversed, and an abuse of that discretion must be shown for this court to modify or vacate the award. See Price v. Department of Public Safety and Corrections, Avoyelles Correctional Center, 03-0979, p. 3 (La.App. 1st Cir.4/2/04), 878 So.2d 612, 614.
We disagree with LSU's assertion that the facts reveal that it acted reasonably and in good faith in terminating Ms. Morgan's employment. Although LSU's reasons for seeking termination of Ms. Morgan's employment may have been valid and in good faith, the manner in which it sought to terminate her employment, in clear violation of the requirements of Civil Service Rule 12.7, cannot be likewise regarded. Despite evidence that Ms. Morgan did not receive timely notice of its proposed action, LSU, nevertheless, decided to proceed with terminating her employment. Based on this evidence, we cannot say that the Commission abused its discretion in awarding Ms. Morgan attorney fees in this matter.

CONCLUSION
For the foregoing reasons, we affirm the decision of the Commission reversing LSU's termination of Ms. Morgan's employment, reinstating her employment, and awarding attorney fees. All costs of this appeal, in the amount of $269.00, are assessed to Louisiana State University Health Sciences Center-E.A. Conway Medical Center.
AFFIRMED.
NOTES
[1] Civil Service Rule 1.4 defines "appointing authority" as "the agency, department, board, or commission, and the officers and employees thereof authorized by statute or by lawfully delegated authority to make appointments to positions in the State Service."
[2] According to the return receipt postcard, Rick Bowen signed for delivery of the letter.
[3] See Civil Service Rule 13.20.
[4] See Civil Service Rule 13.36 and La. Const. Art. X, § 12(A).