In the

# United States Court of Appeals

## For the Seventh Circuit

No. 24-2313

LORI CHAVEZ-DEREMER,
Secretary of Labor,

*Petitioner,*

*v.*

ELMER MILLER d/b/a
MILLER BUILDING SYSTEMS, LLC,

*Respondent.*

Petition to Enforce an Order of the
Occupational Safety & Health Administration
No. 1629559

ARGUED FEBRUARY 10, 2025 — DECIDED SEPTEMBER 10, 2025

Before EASTERBROOK, ROVNER, and LEE, *Circuit Judges*.

ROVNER, *Circuit Judge*. Elmer Miller, a general contractor and owner of a construction company, has been an actual and metaphorical moving target for the Occupational Safety and Health Commission (Commission or OSHA). The Commission is responsible for assuring, as best it can, that workplaces

are safe for workers. And so, when one of its inspectors discovers that a business owner like Miller has not provided fall protection for workers laboring high off the ground, it can issue a citation, as it did here. The Occupational Safety and Health Act ("Act") allowed Miller fifteen working days from the date of receipt of the citation to contest it, before it became a final order of the Commission. 29 U.S.C. §659(a). And then once it became a final order, Miller had sixty days to file a petition for review with this court, before the final order became ripe for an order for summary enforcement. 29 U.S.C. §660(b).

The Secretary of Labor, who oversees the Commission, petitioned this court for enforcement of the final order on July 30, 2024. Summary enforcement of the final order by a court is a purely ministerial action and unreviewable by any court or agency. 29 U.S.C. §660(b), 29 U.S.C. §659(a). That means that one of the very few ways for the recipient of the citation to contest it after fifteen working days has passed is to assert that the Commission did not properly serve the citation, and therefore it never became a final order over which this court has jurisdiction. This is precisely what Miller claims here. And so, the only question we are left to answer is did the Commission demonstrate that it adequately served Miller with the citation.

The Commission initially sent the citation to "Elmer Miller dba Miller Building Systems, LLC," by United States Postal Service certified mail, as the Act instructs. 29 U.S.C. §659(a). The Commission sent the certified mail to 433 E. County Road, 100 North, Arcola, Illinois 61910 ("433 address"), the address to which the Commission had sent many notices in the past. According to the tracking information, someone at that address twice refused to accept the certified mail when

the United States Postal Service attempted delivery, and therefore the postal service returned the mail noting that it had been "refused" two times.

Once the certified mail was returned as refused, the Commission moved to a new plan, resending the citation to Miller at the same address using United Parcel Service (UPS) ground service delivery with tracking services. UPS tracking showed that the citation was delivered and that it was "Received By Miller." R. 5 at 19.

Miller claims in his brief that the Commission bears the burden of demonstrating adequate service, and that it failed to do so for the following two reasons: first, because the Commission did not send the citation to the proper address, and second, and relatedly, because it has no proof that Miller received the document. Miller claims that his address and that of his business is **435** East County Road, 100 North, Arcola, Illinois, 61910 ("435 address"), and not the 433 address. As we describe in more detail below, public records indicate that Miller Building Systems owns both parcels of land.

Miller's argument about the incorrect address is a new one. In his answer to the Secretary's "Petition for Summary Enforcement and Proposed Judgment" in this court, he argued only that the Commission did not properly execute service for the following three reasons: it sent notice by UPS rather than certified mail, it should have sent the notice to his counsel, and the date the order became final was incorrect. It was not until Miller's response to the Secretary's substantive brief in this case that he moved the target, alleging that the Commission had no proof that he was associated with the 433

address.[1] Miller alleges that he could not have made this argument any sooner than he did because at the time he filed his brief he had not yet seen the agency record. But the Commission's very first filing in this court—the Petition for Summary Enforcement—contained an attachment that included almost all of the information in the agency record—including a copy of the cover letter and citation, both of which were addressed to "Elmer Miller, dba Miller Building Systems LLC and its successors, 433 East County Road, 100 N, Arcola, IL 61910." R.1 at 12, 14. Miller therefore knew from the inception of this matter that the Commission sent the notice to the 433 address. Nevertheless, we will put this belated argument

---

[1] This is why we describe Miller as a metaphorical moving target. As for the literal moving target piece, having twice refused service of the certified mail, or, perhaps having instructed an employee or family member to do so, he now accuses the Commission of failing to prove that it provided him with service. Some might describe this as "chutzpah." Miller has a documented history of attempting to avoid service of Commission citations. On at least four occasions since 2018, the Commission has needed to hire a private process server to effectuate service on Miller. *See* Reply Brief, Exh. B at 2 (Declaration of Tricia L. Rankin, Assistant Area Director of the Commission, Peoria Area office). On each of those occasions Miller was served at the 433 address. And on one occasion, when the Secretary moved the court to require Miller to waive service and provide reliable contact information, Miller provided the 433 address as his reliable contact address. *See Id.* at Exh. N. As we explain later, we take judicial notice of the court documents in exhibits M and N of the Secretary's reply brief. We do not accept the factual assertions made in Assistant Area Director Rankin's declaration for the truth of the matter, but rather for the purpose of assessing whether the Commission's attempts to serve Miller at the 433 address were reasonably calculated to give Miller fair notice of the citation, in light of the information it had at the time.

issue aside and discuss what is required for the Commission to fulfill its notice requirements.[2]

Although it is true that section 10(a) of the Act calls for the Commission to send a citation by certified mail, it would be absurd to conclude that an employer could avoid fines and sanctions merely by contumaciously refusing to accept the citations the Commission sends by certified mail. The Due Process Clause of the Constitution defines the type of notice a government entity must provide a citizen before depriving it of property by, for example, levying a fine for regulatory violations. As the Supreme Court has defined it, "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Due process does not require that the government "*must provide* actual notice, but that it *must attempt to provide* actual notice." *Dusenbery v. United States*, 534 U.S. 161, 170 (2002) (emphasis in original). If the government has reason to know that the party never received the initial notice, it need only undertake reasonable additional efforts at notification. *Jones v. Flowers*, 547 U.S. 220, 234 (2006) (declaring that if a certified letter comes back as

---

[2] Miller has dropped his arguments regarding notice to his lawyers and the miscalculated date, the latter of which has been corrected in the Secretary's brief.

"unclaimed," the government must take additional reasonable steps to give notice).[3]

For this reason, the agency has long interpreted the Act to allow for alternative methods of service if the agency cannot effectuate service through certified mail. *See Donald K. Nelson Constr., Inc.*, 3 BNA OSHC 1914, 1976 WL 30037, at \*1 (No. 4309, 1976) ("[A]n alternative method may be used if service by certified mail cannot be effected."); *see also Field Operations Manual* Chapter 5, § XI(b)(1) ("[U]se of a mail delivery service other than the United States Postal Service, can be used **in addition** to certified mail if it is believed that these methods would effectively give the employer notice of the citation.) (emphasis in original); *DRTG Builders, LLC v. Occupational Safety & Health Comm'n*, 26 F.4th 306, 311 (5th Cir. 2022) (OSHA's service by UPS was reasonably calculated to provide the employer with notice after the original notice by USPS was never retrieved from the post office.). The relevant question is "whether the service is reasonably calculated to provide an employer with knowledge of the citation and notification of proposed penalty and an opportunity to determine

---

[3] The Supreme Court has considered the adequacy of notice in many different contexts, including, for example, to a taxpayer on the brink of losing a home, *Jones*, 547 U.S. at 220; owners of seized cash and automobiles, *Dusenbery*, 534 U.S. at 161; creditors of an estate, *Tulsa Pro. Collection Servs., Inc. v. Pope*, 485 U.S. 478 (1988); a mortgagee of property subject to a pending tax sale, *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791 (1983); tenants living in public housing subject to eviction, *Greene v. Lindsey*, 456 U.S. 444 (1982); and beneficiaries of a common trust fund, *Mullane*, 339 U.S. at 306. We have no reason to think it would define notice any differently in the case of a citation from the Commission.

whether to abate or contest." *B.J. Hughes, Inc.*, 7 BNA OSHC 1471, 1474, 1979 WL 8462, at *3 (No. 76-2165, 1979).

To sum up, due process does not require actual receipt of the violation, only that the government's service was reasonably calculated to provide notice of the citation. In this case, therefore, if the government sent the notice to the proper address (and we will address this question shortly), the government's attempt to serve Miller by certified mail was likely sufficient, as the government took steps reasonably calculated to give Miller notice of the citation, despite the fact that the mail was refused. *Dusenbery*, 534 U.S. at 169–70; *see also George Barry, et al., d/b/a Union Waterproofing, Roofing & Painting Co.*, 9 BNA OSHC 1264, 1981 WL 18843,*4 (No. 77-2720, 1981) ("[O]rdinarily, nonreceipt or refusal to accept mail does not affect the validity of service."); *Maxim Crane Works*, No. 17-1894, 2020 WL 9894075, at *8 (O.S.H.R.C. A.L.J. Jan. 14, 2020) (noting that service of "certified mailing of the Citation and Notification of Penalty was still valid, even though Respondent did not receive it"), *affirmed*, *Maxim Crane Works*, 2021 CCH OSHD ¶ 33847 (O.S.H.R.C. No. 17-1894, 2021). Where the notice comes back as "undeliverable," the government is on notice that it must take additional reasonable steps to attempt notice again. *See Jones*, 547 U.S. at 230; *see also Garcia v. Meza*, 235 F.3d 287, 291 (7th Cir. 2000) (holding that even though the government may have believed at the time of sending the notice that its methods were adequate to apprise the recipient, once it was informed by the carrier that the plaintiffs had never received written notice of the impending proceeding, due process required the government to try again). A notice of refusal, however, is different from a notice that service was "undeliverable." In the case of a refusal, the Commission has reason to think that Miller knew that it had

been delivered but was purposefully trying to evade the con-
sequences of that notice. But if Miller were deliberately refus-
ing to accept the otherwise properly sent certified mail, the
reason he did not receive notice would be of his own mak-
ing—not that of the Commission. Miller cannot avoid the con-
sequences of violating the Commission's safety regulations
by refusing to accept the certified mail. And Miller is no less
responsible for his lack of notice if he instructed his employ-
ees or family members to refuse the service on his behalf, as
he would be if he did it himself. In such a case, we see no rea-
son why due process would require the Commission to try
again.

If employers could avoid OSHA regulations simply by re-
fusing to accept certified mail, the provision requiring the
Commission to send notification by certified mail would es-
sentially eviscerate any enforcement powers in the Act. We
need not, decide, however, if "refused" certified mail requires
the Commission to take reasonable additional steps to notify
the employer, because the Commission did take such addi-
tional steps here. And once the certified mail was twice re-
jected, it was eminently reasonable for the Commission to try
a different method, as it did by sending the notice via UPS.
*See Mullane*, 339 U.S. at 315 ("The reasonableness and hence
the constitutional validity of any chosen method may be de-
fended on the ground that it is in itself reasonably certain to
inform those affected, or, where conditions do not reasonably
permit such notice, that the form chosen is not substantially
less likely to bring home notice than other of the feasible and
customary substitutes.") (internal citations omitted); *DRTG
Builders*, 26 F.4th at 311 (concluding that OSHA properly
served an employer with notice via UPS after an unsuccessful
initial attempt by USPS certified mail).

Miller argues that, in any event, neither mailing constituted a reasonable attempt to give him notice of the citation because the government sent the notice either negligently or purposefully to the incorrect address. Miller asserts that his address and that of his business is the 435 address, and the government sent the notice to the adjacent property at the 433 address. Miller argues that because the Commission has not presented any evidence to support a finding that the certified mail or UPS ground package were sent to Miller at the 435 address, the Commission has not met the burden of proving that service was proper.

Official public records indicate, however, that the 433 address is one with which Miller is undeniably associated, and is an address that both he and Miller Building Systems have used in official government transactions on many occasions. We, therefore, take judicial notice of the fact that the 433 address is one associated with Miller, and an address at which the Commission reasonably could be assured Miller would receive the citation.

> Rule 201(b) of the Federal Rules of Evidence permits a court to take judicial notice of an adjudicative fact that is 'not subject to reasonable dispute' because it:
>
>> (1) is generally known within the trial court's territorial jurisdiction; or
>>
>> (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.—

*In the Matter of Lisse*, 905 F.3d 495, 496 (7th Cir. 2018) (quoting Fed. R. Evid. 201(b)). A party need not make a separate

request to the court for judicial notice. It need only refer to the evidence in its brief and explain why it is relevant and subject to judicial notice. *Id.* The Commission explains that Miller has asserted for over a decade that the 433 address was his business address and thus service of the citation to that address was reasonably calculated to provide him notice. Judicial notice of public records listing Miller's address at 433 would demonstrate that notice addressed to 433 was reasonably calculated to apprise him of the citation.

We cannot reasonably question the accuracy of the Douglas County tax and property records that list the owner of the 433 address as Miller Building Systems, LLC, c/o Elmer M. Miller.[4] See Reply Brief at Exh. C & D. The Commission also conducted a public records search with CLEAR, a public records search tool offered by Thomson Reuters. That search revealed that Miller Building Systems Inc. registered a vehicle to the 433 address.[5]

---

[4] Miller argues that the Commission issued the citation to Elmer Miller individually and not Miller Building Systems, but he is incorrect. The initial December 2, 2022, letter from the Commission to Miller was addressed to "Elmer Miller, dba Miller Building Systems, LLC." R.5 at 5. And the Petition for Summary Enforcement filed in this court states that "Pursuant to section 11(b) of the Occupational Safety and Health Act of 1970 (OSH Act), 29 U.S.C. §660(b), the Secretary of Labor petitions this Court for an order summarily enforcing the Occupational Safety and Health Review Commission's (Commission) January 4, 2023 final order against Respondent Elmer Miller, dba Miller Building Systems, LLC (Miller)." R.1 at 1. In any event, notice to Miller at either his home or work address could be reasonably calculated to apprise Miller of the citation.

[5] The Commission also offers information from several private websites that allow a user to search for business registration. These websites

(continued)

Moreover, having claimed to the Commission, multiple courts, and myriad other governmental bodies that his address was the 433 address, Miller cannot now claim that notice to the 433 address was not reasonably calculated to apprise him of the citation. OSHA has inspected Miller's workplace thirteen times and issued citations for thirty-eight violations, all sent to the 433 address. The Commission has verified Miller's receipt of service at that address. And in fact, Miller asserts in his answer in this very case that he has "received and contested prior OSHA citations" all of which were sent to the 433 address. R. 3 at 2. In more than a decade of interacting with the Commission, in his communications with the agency, with its legal counsel, and in proceedings before the Commission, Miller has never before informed the Commission that it erred by sending citations to the 433 address. As both a pro se litigant and when represented by counsel, Miller has stated to federal courts that the 433 address was the correct address for his business operations. For example, in 2020, in other litigation over OSHA violations, Miller submitted an answer in a case before the Commission that stated as follows:

> Respondents admit … Miller building systems
> LLC having business operations engaged in res-
> idential construction work and other related

also list the 433 address as being registered to Miller Building Systems, LLC. Because Miller could argue about the veracity or reliability of the information from these commercial websites, we will not take judicial notice of the information from those commercial websites, or from declarations or affidavits that have not been made subject to testing and challenge through the judicial process. *See In the Matter of Lisse*, 905 F.3d at 496–97. In any event, the information about the 433 address contained in those records and declarations is merely duplicative of the information from the official government tax and property records.

> activities during the times at issue herein. …
> The correct address for such operations is 433 E.
> County Road 100 N., Arcola, Illinois 61910.

Reply Brief, Exh. M at 2. And in proceedings involving other OSHA citations in the District Court for the Central District of Illinois, Miller has specifically requested to be served at the 433 address. *Id.*, Exh. N at 1.

We take judicial notice of the fact that the 433 address is an address where the Commission could reasonably calculate that Miller would be found and could receive the citation. We hold, therefore, that the Commission's mailings to the 433 address were reasonably calculated to apprise Miller of the citation. Consequently, we grant the Secretary's petition for summary enforcement and issue the enforcement decree pursuant to 29 U.S.C. §660(b).

By so holding, we have done Miller a great favor. The alternative would be for us to appoint a special master to determine at a hearing whether Miller is indeed associated with the 433 address in such a way that notice sent to that address was reasonably calculated to apprise him of the citation. If we were to do so, we might be inclined to suggest to the district court that it assign costs of the proceeding to Miller, and possibly impose sanctions if it finds that Miller's claim to the contrary was frivolous.

The Secretary of Labor's petition for summary enforcement is GRANTED and we hereby issue the enforcement decree pursuant to 29 U.S.C. §660(b).